1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

VICTOR R.,

Plaintiff,

v.

MARTIN J. O'MALLEY, Commissioner
of Social Security,[1]

Defendant.

Case No.:  3:23-cv-00501-GPC-BGS

**ORDER ON JOINT MOTION FOR
JUDICIAL REVIEW**

**[ECF 15]**

On March 20, 2023, Victor R., Plaintiff, filed a Complaint seeking judicial review under 42 U.S.C. § 405(g) of the January 28, 2022, decision of Administrative Law Judge (ALJ) Randolph E. Schum finding that Plaintiff was not disabled under the Social Security Act (AR 1-5).  (ECF 1.)  The decision became final on January 23, 2023, when the Appeals Council denied review of the ALJ's decision.

This Report and Recommendation is submitted to United States District Judge Gonzalo P. Curiel under 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c).  For the following reasons, it is recommended that the final decision of the Commissioner be

---

[1] Martin J. O'Malley, Commissioner of Social Security, is substituted for his predecessor, Kilolo Kijakazi, Acting Commissioner of Social Security, under Fed. R. Civ. P. 25(d).

1    **VACATED**, and the case be **REMANDED** for further proceedings.

2        **I.   Background**

3        Plaintiff filed an application for a period of disability and disability insurance

4    benefits on November 2, 2020.  (AR 15.[2])  He alleged disability beginning January 1,

5    2018.  (*Id.*)  The claims were denied on April 16, 2021, and on reconsideration, on July

6    30, 2021.  (*Id.*)  A telephone hearing was held before ALJ Schum on January 10, 2022.

7    (*Id.*)

8        After its hearing, the ALJ made the following findings and conclusions under the

9    five-step sequential process.  *See* 20 C.F.R. § 404.1520(a)(4).  At step one, the ALJ

10   concluded that "[t]he claimant meets the insured status requirements of the Social

11   Security Act through December 31, 2021" and "has not engaged in substantial gainful

12   activity since January 1, 2018, the alleged onset date (20 CFR 404.1571 et seq., and

13   416.971 et seq.)."  (AR 17.)

14       At step two, the ALJ concluded that "[t]he claimant had the following severe

15   impairments:  history of coronary artery disease/ischemic heart disease (20 CFR

16   404.1520(c) and 416.920(c))."  (AR 18.)  At step two, the ALJ also evaluated the severity

17   of Plaintiff's medically determinable mental impairments of depression and post-

18   traumatic stress disorder (PTSD) by following the special psychiatric review technique

19   (PRT) using the "paragraph B" criteria described in 20 C.F.R. § 404.1520a.  (*See* AR 19-

20   20.)  Using that technique, the ALJ rated the degree of functional limitation Plaintiff had

21   in four areas due to the depression and PTSD:  his ability to understand, remember, or

22   apply information; interact with others; concentrate, persist, or maintain pace; and adapt

23   or manage himself.  *See* 20 C.F.R. § 404.1520a(c)(3).  Using the PRT, the ALJ rated

24   Plaintiff's degree of limitation in the four areas by using the five-point scale of "[n]one,

25   mild, moderate, marked, and extreme."  *See* 20 C.F.R. § 404.1520a(c)(4).  The ALJ

26

27   _____

28   [2] Unless otherwise indicated, the Court cites to the Administrative Record (AR) in this
     case (*see* ECF 8).  Citations to the AR are to the page numbers on the original document.

found that the depression and PTSD "caused no more than 'mild' limitation in any of the functional areas."  (AR 20.)  The ALJ then concluded that "the evidence did not otherwise indicate that there was more than a minimal limitation in [Plaintiff's] ability to do basic work activities," and that the mental impairments were, therefore, non-severe.[3]  (*Id.*)

At step three, the ALJ concluded that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."  (AR 20.)

As to Plaintiff's residual functional capacity (RFC), the ALJ concluded that

> the claimant had the residual functional capacity to perform light wok as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant could lift and/or carry 20 pounds occasionally and ten pounds frequently; stand and/or walk six hours in an eight-hour day; sit for six hours in an eight-hour day; never climb ropes, ladders or scaffolds; frequently balance; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to temperature extremes, fumes, odors, dust, and gases, and unprotected heights.

(AR 20.)

At step four, the ALJ concluded that Plaintiff "was capable of performing past relevant work as a sales representative, data processing services and sales manager.  This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965)."  (AR 24.)  As a result, after its step four conclusion, the ALJ concluded that "[t]he claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2018, through the date of this decision (20 CFR 404.1520(f) and 416.920(f))."  (*Id.*)

## II.     Issues

---

[3] A rating of the degree of limitation as "none" or "mild" generally results in a conclusion that an impairment is not severe.  20 C.F.R. § 1520a(d).

Plaintiff raises two issues in the Joint Motion:  (1) "whether remand is required because the ALJ failed to either include the mental limitations he found credible in the dispositive hypothetical question to the VE at step five or in assessing his residual functional capacity or to explain why he was omitting these credible limitations"; and (2) "whether remand is required because the ALJ violated the de minimis standard in finding that Plaintiff's well-documented mental impairments were not severe."  (ECF 15 at 3.)

## III.    Standard of Review

The ALJ's decision may be reversed only if it is not supported by substantial evidence in the record or if it is based on legal error.  *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).  "The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes."  *Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001).  "Substantial evidence means more than a mere scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Revels*, 874 F.3d at 654 (internal quotation marks omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld."  *Id.*; *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) ("If evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the ALJ.).  "Yet we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence."  *Revels*, 874 F.3d at 654 (internal quotation marks omitted).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  *Id.*  "If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

## IV.    Whether remand is required because the ALJ failed to include the mental limitations he found credible in the dispositive hypothetical question to the VE or in his RFC

4

**finding**

## A. Parties' Arguments

Plaintiff explains that during the five-step sequential process, the ALJ identified mild limitations in Plaintiff's mental functioning after assessing Plaintiff's mental impairments by the PRT that were considered non-severe under step two and did not meet a listed impairment under 20 CFR Part 404, Subpart P, Appendix 1, in step three. (*See* ECF 15 at 4-5.)  Plaintiff points out that the mental impairments still had to be considered through the remainder of the five-step evaluation process because an ALJ "must account for all of the functional limitations caused by a claimant's impairments when formulating the RFC finding." (ECF 15 at 5.)  Plaintiff states that "courts in wide-ranging jurisdictions have concluded that PRT findings must find adequate expression via specific functional limitations in the RFC determination or the ALJ must adequately explain their basis for not doing so." (*Id.*)  Plaintiff argues that "[a]bsolutely no limitation in the RFC finding reflected the mild limitations that ALJ [sic] concluded [Plaintiff] was experiencing in [the four areas addressed under the PRT]." (ECF 15 at 6.)  Plaintiff further argues that the "ALJ also provided absolutely no explanation as to why he omitted the limitations he had concluded were already proven in the record in his RFC finding." (*Id.*)  Plaintiff cites SSR 96-8p, which provides that the mental RFC assessment that is used at steps 4 and 5 of the sequential evaluation process requires a "more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B . . . ." (*Id.*)  Plaintiff argues that remand would be unnecessary in this case had the issue been the mental demands of unskilled work; however, in this case, remand is required because the work involved requires mental demands of skilled work. (ECF 15 at 6-7.)  Plaintiff argues that one other ground would make remand unnecessary—if the body of the RFC analysis in the ALJ's decision had "affirmatively explain[ed] why all mental functional limitations ha[d] been limited despite the prior PRT findings." (ECF 15 at 7.)  Plaintiff then addresses the jobs Plaintiff had previously done as addressed by the ALJ in step four—sales representative, data processing services and manager, sales—

and considers the requirements of those positions and whether Plaintiff's limitations from depression and PTSD would allow him to perform that work.  (ECF 15 at 12-13.)  Finally, Plaintiff argues that there is "a total absence of explanation" in the body of the ALJ's RFC analysis of why the mental functional limitations were omitted given the PRT findings of mild in all four categories.  (ECF 15 at 13.)

Defendant argues that although the ALJ must consider whether there are limitations from mental impairments—including non-severe mental impairments like those in this case—this does not mean that the RFC will necessarily include all functional limitations.  (ECF 15 at 16.)  Defendant argues that the ALJ reasonably determined that Plaintiff's mild mental limitations did not warrant RFC restrictions.  (ECF 15 at 17.)  Defendant points out that the ALJ discussed prior administrative medical findings from Drs. Brady Dalton, Psy.D., and Anna Franco, Psy.D.  The ALJ also stated that Plaintiff did not take psychotropic medication for his mental impairments and that there was minimal evidence of mental health treatment.  (*Id.*)  The ALJ stated that Plaintiff's mental status examination showed no issues with thought process or orientation.  (ECF 15 at 19.)

### B.   ALJ Decision

The ALJ's decision contains the following discussion of Plaintiff's mental impairments following its RFC determination.

> On March 6, 2021, state agency medical consultant, Brady Dalton, Psy.D., examined the claimant's mental impairment claims on the initial level of review and found the claimant had non-severe depression and [PTSD].  Anna Franco, Psy.D., concurred with Dr. Dalton's assessment on the reconsideration level of review . . . .  These opinions were fully persuasive as they were consistent with each other and the medical record.  In support of this finding, there was minimal evidence of mental health treatment . . . , and the claimant was not on psychotropic medication, which was inconsistent with severe mental health impairments.  The claimant's activities of planning a trip to Peru and looking for skilled work were also inconsistent.
>
> Dr. [Azam] Shamani, [M.D.,] submitted a medical opinion dated December 21, 2020 . . . .  Dr. Shamani opined that the claimant

6

could frequently lift and/or carry 20 pounds; stand, walk, and sit for eight hours each in an 8-hour day; frequently perform all postural activities; was capable of low stress jobs only due to depression and anxiety which occasionally interfered with the claimant's attention and concentration; and would miss about three days of work a month . . . . This opinion was not persuasive. Dr. Shamani relied too much on the claimant's subjective complaints of neuropathy; however, the undersigned noted he still found the claimant could do light work.  Moreover, Dr. Shamani was unqualified as a family practice doctor to opine vocational effects from psychiatric impairments.

(AR 23.)

## C.   Discussion

An RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *1.  It is the most a claimant can do given his limitations.  20 C.F.R. § 404.1545(a)(1).  The ALJ must consider all medical impairments when formulating the RFC, including those that are not severe.  20 C.F.R. § 404.1545(a)(2).

Formulating the RFC requires a "more detailed assessment" of a claimant's mental impairments than what is required for the step two, paragraph B analysis.  SSR 96-8p, 1996 WL 374184 at *4 ("The mental RFC assessment used at steps four and five of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in [paragraph B] of the adult mental disorders listings . . . ."); *David Allan G. v. Comm'r of Soc. Sec.*, No. 1:21-cv-00162-DKG, 2023 WL 2479921, at *4 (D. Idaho Mar. 10, 2023) (finding an ALJ erred by not including a discussion "reflecting that she considered all of Plaintiff's medically determinable impairments, specifically the mental impairments, in fashioning the RFC and making the disability determination").  "This is because in some instances, when a nonsevere impairment is considered 'in combination with limitations imposed by an individual's other impairments, the limitations due to such a [nonsevere] impairment may prevent an individual from performing past relevant work or may narrow the range of

7

1  other work that the individual may still be able to do.'"  *Id.*, at *5 (quoting SSR 96-8p).

2  　　　Here, at step two, in its paragraph B analysis, the ALJ found Plaintiff had mild

3  functional limitation in all four of the broad functional areas, *i.e.*, mild limitation in

4  understanding, remembering, or applying information; interacting with others;

5  concentrating, persisting, or maintaining pace; and adapting or managing himself.  (*See*

6  AR 19-20.)  The ALJ did not include these mild limitations in the RFC.  (*See* AR 20.)

7  The ALJ's decision did not explain why the RFC did not contain these limitations.  (*See*

8  AR 20-24.)  Although the ALJ addressed medical evidence showing that Plaintiff's

9  depression and PTSD were non-severe, the ALJ did not explain why his findings of mild

10 limitation in the four broad functional areas used to evaluate Plaintiff's mental

11 impairments were not included in the RFC.

12 　　　The ALJ erred by either not including mental limitations in the RFC or in

13 explaining why Plaintiff's mental impairments were not limiting.  *See Hutton v. Astrue*,

14 491 F. App'x 850 (9th Cir. 2012) ("Regardless of [a mental limitation's] severity . . . the

15 ALJ was still required to consider [the plaintiff's mental limitation] when he determined

16 [the plaintiff's] RFC."); *see also Craig H. v. Kijakazi*, 22-cv-0800-AJB-LR, 2023 WL

17 4679342, at *12 (S.D. Cal. July 21, 2023) (remanding because "the ALJ's written opinion

18 does not articulate why, after finding that Plaintiff had mild mental limitations in three of

19 four broad paragraph B criteria, he did not include any of those restrictions in the RFC"),

20 *report and recommendation adopted by* 2023 WL 5340794 (S.D. Cal. Aug. 18, 2023);

21 *Kitty S. v. Kijakazi*, No. EDCV 21-00390-JEM, 2022 WL 2117160, at *5-7 (C.D. Cal.

22 June 13, 2022) (holding it was reversible error when the ALJ made "mild step two

23 paragraph B findings" but did not discuss claimant's non-severe mental impairments at

24 later steps, "in particular in formulating [the] RFC").

25 　　　Since the ALJ did not indicate that the evidence showed that Plaintiff's ability to

26 work was unaffected by mental limitations, the ALJ should have included the limitations

27 in the hypothetical question presented to the VE.  *See Solomon v. Comm'r of Soc. Sec.*

28 *Admin.,* 376 F. Supp. 3d 1012, 1021-22 (D. Ariz. 2019) ( holding that because the ALJ

found that the claimant had "mild limitation" in social functioning, concentration, persistence, and pace, the ALJ was required to include those limitations in the hypothetical to the vocational expert); *see also Hutton*, 491 Fed. App'x at 851 (holding the ALJ erred "in failing to include [the claimant's] post-traumatic stress disorder . . . in his hypotheticals to the vocational expert at Step Five," after the ALJ found that the PTSD caused the claimant "mild" limitations in the area of concentration, persistence, or pace); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011) ("[T]he ALJ determined at step two that Winschel's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace. But the ALJ did not indicate that medical evidence suggested Winschel's ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical. Consequently, the ALJ should have explicitly included the limitation in his hypothetical question to the vocational expert.").

The ALJ's boilerplate language at the conclusion of its step two analysis that, "The following residual functional capacity assessment reflects the degree of limitation the undersigned had found in the 'paragraph B' mental functioning analysis" (*see* AR 20), does not satisfy the "more detailed assessment" required by the regulations. *David Allan G.*, 2023 WL 2479921, at *2 ("Ultimately, aside from a brief, boilerplate indication that 'any impairment, symptom, or condition not addressed above has not affected the claimant's residual functional capacity,' the ALJ's opinion does not include any discussion or analysis of how Plaintiff's non-severe mental impairments were factored into the RFC determination, and the RFC itself does not contain any nonexertional limitations."); *Delia v. Saul*, No. 1:18-CV-00314-CWD, 2019 WL 4601834, at *7-9 (D. Idaho Sept. 23, 2019) ("The boilerplate language used in the ALJ's decision, without any discussion of Petitioner's mental impairments in the RFC determination, does not satisfy the regulation's requirements."); *Barrera v. Berryhill*, No. CV 17-07096-JEM, 2018 WL 4216693, at *5 (C.D. Cal. Sept. 5, 2018) (reversing the ALJ's decision that "did not say [the ALJ] had considered mild limitations or nonsevere impairments, offering only

boilerplate language that she had considered 'all symptoms'"); *see Michele M. v. Saul*, No. 19-cv-00272-JLB, 2020 WL 1450442, at * 8 (S.D. Cal. Mar. 25, 2020) (holding that the statement that "the following residual capacity assessment reflects the degree of limitation I have found in the paragraph B mental functioning analysis" in the step two analysis section of the decision failed to conclusively indicate that the ALJ had considered the non-severe mental impairments when determining the RFC).

Although in *Ball v. Colvin*, No. CV 14-2110-DFM, 2015 WL 2345652, at * 3 (C.D. Cal. May 15, 2015), the court concluded that the ALJ's reference to two state agency medical consultants about the severity of the claimant's mental impairments in the step two section of its decision showed that the ALJ had considered the mild mental limitations when determining the claimant's RFC in the RFC section of its decision, unlike in *Ball*, the ALJ in this case did not refer to his step two finding of mild limitations in the RFC section of his decision when he referenced the two state agency medical consultants' findings of non-severity in relation to Plaintiff's depression and PTSD.  A court cannot impose its own reasoning to affirm the ALJ's decision.  *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2017).

In sum, the ALJ failed to discuss any functional limitations caused by the non-severe mental impairments with any particularity, and only briefly noted the opinions of two non-treating state agency doctors and without referencing the step-two mild limitations.  In fact, the content of those opinions is only that the depression and PTSD were non-severe, which does not justify entirely disregarding the four mild limitations in the RFC determination.  *See Hutton*, 491 Fed. App'x at 851.

**D.    Harmless Error**

Under step four, the ALJ concluded that Plaintiff was capable of performing past relevant work as a "sales representative, data processing services," and "manager, sales." (AR 24.)  These occupations have specific vocational preparation times (SVP) of 7 and 8, respectively, meaning that they are skilled occupations (*id.*).  Dictionary of Occupational Titles (DOT) §§ 251.175-014; 163.167-018; *see* SSR 00-4p, 2000 WL 1898704

10

(explaining that jobs with an SVP rating of 5 to 9 are skilled work).  A properly formulated RFC might contain mental limitations inconsistent with Plaintiff's past relevant work that the ALJ found Plaintiff could perform.  The ALJ's error, therefore, is not harmless.  *See David Allan G.*, 2023 WL 2479921, at *6 (concluding there was no harmless error because it was unclear from the ALJ's decision whether Plaintiff could perform past relevant work notwithstanding mild mental limitations); *Carlson v. Berryhill*, No. 18-CV-03107-LB, 2019 WL 1116241, at *18 (N.D. Cal. Mar. 10, 2019) ("[T]he court cannot determine what would have happened had the ALJ considered the plaintiff's mild mental impairments when assessing the RFC or how the vocational experts would have testified had that limitation been included in the hypotheticals posed."); *Ynzunza v. Astrue*, No. CV 07-7166-PLA, 2010 WL 3270975, at *8 (C.D. Cal. Aug. 17, 2010) ("[I]n concluding that plaintiff can do his past work as defined in the DOT, the ALJ failed to consider the combined effects of all of plaintiff's impairments— including his non-severe depression and his limitations with concentration and attention." (citing SSR 85-28, 1985 WL 56856)).

### E.   Remand

"The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court."  *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (internal quotation marks omitted) (alteration in original). Because a properly formulated RFC might still support a conclusion that Plaintiff was not disabled, remand for further proceedings is appropriate here.  *See Bunnell v. Barnhart*, 336 F.3d 1112, 1116 (9th Cir. 2003) (remanding for further administrative proceedings where several "outstanding issues" remained to be resolved, and it was, therefore, "not clear from the record that an [ALJ] would be required to find the claimant disabled and award disability benefits").

### V.   Whether remand is required because the ALJ violated the de minimis standard in finding that Plaintiff's well-documented mental impairments were not severe

### A.   Parties' Arguments

1    Plaintiff explains that under the de minimis standard used at step two of the

2    sequential evaluation process to determine whether an impairment is severe or non-

3    severe, a medically determined impairment, or combination of impairments, may be

4    found non-severe only if it is a "slight abnormality" that imposes no more than a

5    "minimal effect on the ability to work."  (ECF 15 at 21 (citing *Corrao v. Shalala*, 20 F.3d

6    943, 949 (9th Cir. 1994)).)  Plaintiff argues that the ALJ made prejudicial error by failing

7    to consider all the evidence at step two, ignoring evidence supportive of Plaintiff's

8    allegations of limitations related to his mental impairments; by rejecting Dr. Shamani's

9    opinion as speculative; and by failing to develop the evidence of record.  (ECF 15 at 23,

10   25.)

11   Defendant responds that the ALJ properly evaluated Plaintiff's mental impairments

12   under the four paragraph B criteria and found that Plaintiff had mild limitations in each

13   area.  (ECF 15 at 25-26.)  Because the limitations were mild, two prior administrative

14   medical findings based on state agency psychologists' evaluations concluded the

15   impairments were non-severe, Plaintiff's primary care doctor Dr. Shamani stated that

16   Plaintiff had "normal mood affect and cognition, including concentration, Plaintiff's

17   treating psychologist's examination showed that Plaintiff was "within normal limits,"

18   there was minimal evidence of mental health treatment, and Plaintiff was not taking

19   medications for his mental health, the ALJ determined that the PTSD and depression

20   were non-severe.  (ECF 15 at 26-27.)  Defendant argues that "substantial evidence

21   supports the ALJ's step-two determination."  (ECF 15 at 29.)  Defendant argues that a

22   finding of a mild deficiency in the paragraph B criteria is equivalent to a non-severe

23   impairment—one that only minimally impacts the ability to do work.  Defendant cites the

24   evidence that supports the findings of mild impairments of the four criteria.

25   Plaintiff replies by pointing out that Defendant has failed to address that the ALJ

26   failed to evaluate psychiatric testing results that show the severity of Plaintiff's mental

27   impairments.  (ECF 15 at 30.)  Plaintiff argued that the ALJ failed to recognize Plaintiff's

28   testimony from the ALJ hearing that he had been seen by Dr. Mary McGinn Clark, Ph.D.,

12

from 2017 to 2021.  (*Id.*)  Plaintiff argues that the ALJ also failed to evaluate, consider, or observe the psychiatric test results in the record, including the QIDS-SR, GAD-7, ACE, and PCL-5, concluding summarily that they were subjective.  (*Id.*)  Plaintiff cites Agency regulation POMS DE 24583.050(A).  (*Id.*)  Plaintiff argues that the ALJ's failure to observe and consider the psychiatric test results and failure to explain inconsistences between the test results and Plaintiff's clinical history is reversible error.  (ECF 15 at 31.)  Plaintiff argues that the ALJ rejected the treating physician's opinion, ignored psychiatric test results, and understating objective findings about Plaintiff's impairments.  (*Id.*)  Therefore, Plaintiff argues that the ALJ's step two finding that Plaintiff's PTSD and depression were non-severe is not supported by substantial evidence.  (*Id.*)

**B.    ALJ Decision**

As discussed, at step two, the ALJ concluded that Plaintiff had the severe impairments of a "history of coronary artery disease/ischemic heart disease." (AR 18.) The ALJ also concluded that "[b]ecause the claimant's medically determinable mental impairments [of PTSD and depression] caused no more than "mild" limitation in any of the functional areas and the evidence did not otherwise indicate that there was more than a minimal limitation in the claimant's ability to do basic work activities, they were non-severe." (AR 20.)  Preceding its conclusion that the PTSD and depression were non-severe, the ALJ made the following findings regarding the Paragraph 4 criteria.

> In making this finding, the undersigned has considered the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
>
> The first functional area is understanding, remembering or applying information. In this area, the claimant has mild limitation. The claimant alleged that his mind was "not clear" (Exh. 5F, at pg. 3).  However, as of June 16, 2021, the claimant denied memory loss (Exh. 13F, at pg. 3). The claimant indicated that he had no problems following instructions including a recipe and was able to drive a vehicle and go out alone.  He shopped in

13

stores and was able to handle money and bank accounts (Exh. 3E). This was inconsistent with more severe limitations in understanding, remembering or applying information.

The next functional area is interacting with others. In this area, the claimant has mild limitation. The claimant reported feelings of being apart from others (Exh. 5F, at pg. 3). However, mental status results on February 8, 2021, showed good mood (Exh. 5F, at pg. 16). The claimant interacted with his daughter and indicated that he had no difficulty getting along with authority figures (Exh. 3E). This was inconsistent with more severe limitations in interacting with others.

The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. The claimant alleged trouble concentrating, feelings of worry, panic, trouble making decisions, and fear of things he should not be afraid of (Exh. 5F, at pg. 3). However, mental status results on February 8, 2021, showed no issues with thought process or orientation (Exh. 5F, at pg. 16). He was able to follow a recipe and prepare meals, drive a car, and handle his own finances. He watched the news, meditated, and did yoga (Exh. 3E). This was inconsistent with more severe limitations in concentrating, persisting or maintaining pace.

The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. The claimant alleged some minor trouble with dressing, but was otherwise independent as to his personal hygiene (Exh. 3E, at pg. 2). However, the claimant reports no problem with handling himself and being alone (Exh. 5F, at pg. 3). He was able to vacuum, wipe down the counters, clean the bathroom, mop, and walk the dog. This was inconsistent with more severe limitations in adapting or managing oneself.

Because the claimant's medically determinable mental impairments caused no more than "mild" limitation in any of the functional areas and the evidence did not otherwise indicate that there was more than a minimal limitation in the claimant's ability to do basic work activities, they were non-severe (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

14

1 (AR 19.)

2    **C.    Discussion**

3        **1.    Applicable Standard**

4        At step two of the five-step sequential inquiry, the Commissioner determines

5 whether the claimant has a medically severe impairment or combination of impairments.

6 *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482

7 U.S. at 140-41 (1987)).  The claimant bears the burden at step two of showing a

8 medically "severe impairment" or "combination of impairments."  *Barnhart v. Thomas*,

9 540 U.S. 20, 24 (2003).  However, this "burden is slight."  *Lorenzo B. v. Saul*, No. 19-

10 CV-0786-AGS, 2020 WL 4732063, at *1 (S.D. Cal. Aug. 14, 2020); *see also Schink v.*

11 *Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) ("A claimant's burden to

12 establish a severe impairment at step two is only 'mild.'").  Step two is used as a "de

13 minimis screening device used to dispose of groundless claims."  *Webb v. Barnhart*, 433

14 F.3d 683, 687 (9th Cir. 2005).

15        At step two, every impairment is "severe" unless the medical evidence "clearly

16 establishe[s]" that the alleged impairment is only a "slight abnormality that has no more

17 than a minimal effect on an individual's ability to work."  *Lorenzo B.*, 2020 WL

18 4732063, at *1 (citing *Webb*, 433 F.3d at 686-87); *see also Melendez v. Comm'r of Soc.*

19 *Sec.*, No. 17-CV-299-FPG, 2020 WL 4274510, at *2 (W.D.N.Y. July 24, 2020) ("[T]he

20 threshold for establishing a severe impairment at step two is extremely low and an ALJ

21 should only deem an impairment non-severe if the medical evidence establishes only a

22 slight abnormality which would have no more than a minimal effect on an individual's

23 ability to work."); *Shah v. Comm'r of Soc. Sec.*, No. 2:19-CV-1184-KJN, 2020 WL

24 2992121, at *3 (E.D. Cal. June 4, 2020) ("An impairment or combination of impairments

25 may be found not severe only if the evidence establishes a slight abnormality that has no

26 more than a minimal effect on an individual's ability to work." (internal quotation marks

27 omitted)).  A court "must determine whether the ALJ had substantial evidence to find that

28 the medical evidence clearly established that [the claimant] did not have a medically

severe impairment or combination of impairments." *Webb*, 433 F.3d at 686-87.

If a claimant demonstrates that he suffers from an impairment that affects his ability to perform basic work activities, "the ALJ must find that the impairment is 'severe' and move to the next step in the SSA's five-step process." *Edlund*, 253 F.3d at 1160. Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Webb*, 433 F.3d at 686 (citing 20 C.F.R. § 404.1521(b)). The ALJ must "consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe," and is "required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity." *See Smolen*, 80 F.3d at 1290.

"In analyzing a mental impairment . . . , the Secretary must consider the evidence in the case record—the mental status examination and psychiatric history." *Corrao*, 1994 WL 25317, at *949 (holding that the ALJ erred by failing to consider "any of the expert medical testimony" and by citing "no evidence to support her conclusion that [the claimant's disability [was] not severe" (citing 20 C.F.R. § 916.920a(b))). The claimant bears the burden of proving that he suffered from "any impairment or combination of impairments which significantly limit[ed his] physical or mental ability to do basic work activities." *Yuckert*, 482 U.S. at 141. When in doubt about whether an impairment meets the de minimis standard of step-two severity, the issue must be resolved in favor of the claimant. *See id.*

**Analysis**

The ALJ's findings in its step two analysis of Plaintiff's mental impairments under the paragraph B criteria, as recounted above, cite the following evidence attached as exhibits to its decision. After discussing those four criteria and finding that Plaintiff's limitations in the four areas examined were mild, the ALJ concluded the mental impairments were non-severe. (*Id.*)

Under the first functional area, understanding, remembering, or applying

16

information, the ALJ cited a Personal Psychotherapy Data Form for Dr. Clark's office dated December 16, 2020.  (*See* AR 540.)  Page 3 a checklist where Plaintiff indicates his mind was "not as clear as it was." (AR 542).  Exhibit 13F is a Medical Record Overview from Dr. Jesse Naghi, MD, for the dates of February 13, 2019, to August 16, 2021.  (AR 794.)  On Page 3, dated July 19, 2021, is written "memory loss denies."  (AR 796.)  Exhibit 3E is a Function Report Plaintiff completed that is dated February 4, 2021.  (AR 236.)  In its decision, the ALJ cited the portion of the report indicating that Plaintiff had no problems following instructions including a recipe and that he was able to drive a vehicle and go out alone.  (*See* AR 19.)

Under the second functional area, interacting with others, the ALJ cited from Exhibit 3E that Plaintiff interacted with his daughter and had no difficulty getting along with authority figures.  (*See* AR 19.)  From Exhibit 5F, Page 16, the ALJ cited a Progress Note dated February 8, 2021, that indicates "good mood" under the heading Significant Changes in Client's Condition (AR 555).[4]

Under the third functional area, concentrating, persisting, or maintaining pace, the ALJ cited from Exhibit 3E that Plaintiff was able to follow a recipe and prepare meals, drive a car, handle his own finances, and watch the news, medicate, and do yoga.  (*See* AR 19.)

Under the fourth functional area, adapting or managing oneself, the ALJ cited from Exhibit 3E that Plaintiff had some minor trouble with dressing, but was otherwise independent as to his personal hygiene.  (AR 20.)

After discussing those four criteria the ALJ concluded that because the claimant's medically determinable mental impairments caused no more than "mild" limitation in any of the functional areas and the evidence did not otherwise indicate that there was more than a minimal limitation in the claimant's ability to do basic work activities, they were

---

[4] Plaintiff's next visit with Dr. Clark appears to have been February 12, 2021, less than a week later.  (*See* AR 556.)  The Progress Note from that date indicates "depressed, not working."  (*Id.*)

non-severe.

The Court begins with the ALJ's determination that Plaintiff's mental impairments are not severe.  In light of the framework discussed above, a court reviews this type of determination by analyzing "'whether the ALJ had substantial evidence to find that the medical evidence clearly established that [the claimant] did not have a severe mental impairment." *Davenport v. Colvin*, 608 F. App'x 480, 481 (9th Cir. 2015) (quoting *Webb*, 433 F.3d at 687).

The ALJ relied on other evidence to support his conclusion that Plaintiff's mental impairments of PTSD and depression were non-severe.  As discussed above, the ALJ relied on opinions of state agency medical consultants Drs. Dalton and Franco in concluding that Plaintiff had non-severe PTSD and depression.  The ALJ also pointed out, in support of its conclusion, that there was minimal evidence of mental health treatment, and that claimant was not on psychotropic medication.  (AR 23.)

The Ninth Circuit has criticized the use of lack of treatment to reject mental complaints, both because mental illness is notoriously under-reported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Matthews v. Astrue*, No. EDCV 11-01075-JEM, 2012 WL 1144423, at *9 (C.D. Cal. Apr. 4, 2012) (citing *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-00 (9th Cir. 1999)); *see also Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (cautioning against relying upon a claimant's failure to seek treatment for a mental disorder and noting "it is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness").  Thus, the ALJ's conclusion that Plaintiff's mental impairments are not severe because of minimal evidence of mental health treatment cannot rest on this rationale.

Plaintiff points out that the ALJ's findings under the RFC section of its decision— Dr. Dalton's opinion that the PTSD and depression were non-severe and the minimal evidence of mental health treatment supporting Dr. Dalton's opinion (*see* AR 23)—

3:23-cv-00501-GPC-BGS

contradict evidence that Plaintiff met weekly with Dr. Clark for four months and Plaintiff's testimony that he attended treatment with Dr. Clark from 2017 to 2021.  (ECF 15 at 22.)  Plaintiff describes screening tests from December 16, 2020, as discussed in Dr. Clark's Progress Notes, which show "very severe depression", on QIDS-SR; "anxiety disorder" on GAD-7; "less than 1% of male population" on ACE (Adverse Childhood Experiences); and "score 52" PCL-5 (Posttraumatic Stress Disorder Checklist).  (AR 549.)  Plaintiff points out the ALJ also ignored this evidence in concluding that his PTSD and depression non-severe at step two.

While an ALJ's findings need only be supported by substantial evidence and a reviewing court may not reweigh evidence or substitute its judgment for that of the ALJ, *Revels*, 874 F.3d at 654, "'[t]he ALJ must evaluate all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation.'" *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (second alteration in original) (quoting 20 C.F.R. §§ 404.1520a(c)(1), 416.920a(c)(1)).  An ALJ may not "'cherry pick' evidence to fit a description of a claimant's mental impairment record that could support a conclusion of non-disability, while ignoring evidence that might not."  *Banuelos v. Saul*, No. 1:19-cv-01652-SKO, 2021 WL 765261, at *15 (E.D. Cal. Feb. 26, 2021) (citing *Honohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001)).

In *Ortiz v. Commissioner of Social Security*, 425 F. App'x 653, 655 (9th Cir. 2011), the Ninth Circuit held that the ALJ had improperly denied the claimant's application for SSI benefits at step two.  The court explained, "the ALJ relied on two mental evaluations diagnosing [the claimant] with depressive and anxiety disorders but not ruling out either a learning disability or borderline intellectual functioning."  *Id.*  The Court reasoned that the evidence was "not the 'total absence of objective evidence of severe medical impairment' that would permit us to affirm 'a finding of no disability at step two.'"  *Id.* (quoting *Webb*, 433 F.3d at 688).

Given the other medical evidence of mental impairments that the ALJ in this case did not consider in concluding that the mental impairments in this case were non-severe,

3:23-cv-00501-GPC-BGS

1   like in *Ortiz*, the ALJ's decision in this case was not supported by a "total absence of

2   objective evidence of severe medical impairment." *See id.* (internal quotation marks

3   omitted).  Substantial evidence does not support the ALJ's conclusion that the PTSD and

4   depression were non-severe.

5          In addition, the ALJ rejected the opinion of Plaintiff's treating physician, Dr.

6   Shamani, as not persuasive, in part because Dr. Shamani relied too much on Plaintiff's

7   subjective complaints of neuropathy.  (AR 23-24.)  "If a treating provider's opinions are

8   based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and

9   the ALJ finds the applicant not credible, the ALJ may discount the treating provider's

10  opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti* v.

11  *Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)).  That said, "when an opinion is not more

12  heavily based on a patient's self-reports than on clinical observations, there is no

13  evidentiary basis for rejecting the opinion." *Id.* (citing *Ryan v. Comm'r of Soc. Sec.*, 528

14  F.3d 1194,1199-00 (9th Cir. 2008)).

15         The ALJ cited to Exhibit 3F as evidence of the subjective complaints.  (AR 23.)

16  Exhibit 3F is a medical source statement filled out by Dr. Shamani.  The questions on the

17  statement require responses from the doctor.  The ALJ has offered no basis for his

18  conclusion that the answers provided by Dr. Shamani were merely reiterating Plaintiff's

19  subjective complaints.  The ALJ also failed to specifically find Plaintiff's self-reports to

20  be not credible.  Therefore, there was no basis to discount as evidence Dr. Shamani's

21  answers on this medical source statement as being based too much on Plaintiff's

22  subjective complaints.  This medical source statement is further evidence that Plaintiff's

23  mental limitations are not non-severe.

24         In sum, the medical evidence did not "clearly establish" that the alleged

25  impairments have only a "slight abnormality that has no more than a minimal effect on an

26  individual's ability to work." *See Lorenzo B.*, 2020 WL 4732063, at *1 (citing *Webb*,

27  433 F.3d at 686-87).  The Court recommends that the case be remanded so the ALJ can

28  continue with the sequential analysis. *See Ortiz*, 425 F. App'x at 655 (remanding to

allow the ALJ to continue the sequential analysis after concluding that the ALJ improperly rejected the claimant's application for SSI benefits at step two).

## VI.    Conclusion

For the reasons stated above, the Court recommends that the final decision of the Commissioner be **VACATED**, and the case **REMANDED** for further proceedings.

This Report and Recommendation will be submitted to the Honorable Gonzalo P. Curiel, the United States District Judge assigned to this case, under 28 U.S.C. § 636(b)(1).  Any party may file written objections with the Court and serve a copy on all parties on or before __**February 15, 2024**__.  The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed on or before __**February 22, 2024**__. The parties are advised that failure to file objections within the specified time may waive the right to appeal the district court's order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED**.

Dated:  February 1, 2024

Hon. Bernard G. Skomal
United States Magistrate Judge

21