UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR R.,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>MARTIN J. O'MALLEY, Commissioner of Social Security,<br><br>　　　　　　　　　Defendants. | Case No.:  23-CV-00501-GPC-BGS<br><br>**ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND VACATING AND REMANDING FOR FURTHER PROCEEDINGS**<br><br>**[ECF No. 15]** |

Victor R. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final administrative decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied Plaintiff's application for disability benefits and supplemental security income under the Social Security Act.  ECF No. 1.  Pursuant to the Magistrate Judge's scheduling order, the parties filed a joint motion for judicial review.  ECF Nos. 9, 15.  On February 1, 2024, Magistrate Judge Bernard G. Skomal issued a report and recommendation ("R&R") recommending that the final decision of the Commissioner be vacated and the case remanded.  ECF No. 16 at

21.[1]  The Commissioner did not file an objection.  After considering all related documents, the Court ADOPTS the R&R, VACATES the Commissioner's decision and REMANDS for further proceedings consistent with this decision.

## BACKGROUND

The Court adopts the underlying facts set forth in the R&R in their entirety and provides only a brief overview.

On January 28, 2022, using the five-step evaluation process in 20 C.F.R. § 404.1520(a)(4), an Administrative Law Judge ("ALJ") held that Plaintiff was not disabled under the Social Security Act.  AR 15-16, 25.  Specifically, the ALJ concluded, at step two of the sequential analysis, that Plaintiff's history of coronary artery disease/ischemic heart disease was severe, but that Plaintiff's medically determinable mental impairments of depression and posttraumatic stress disorder (PTSD) were mild and therefore non-severe.  AR 18-20.  The ALJ did not mention Plaintiff's anxiety.  *See id.* at 19, 549.  The ALJ used the special Psychiatric Review Technique to assess Plaintiff's mental health symptoms and rated the degree of functional limitation Plaintiff had in four areas: Plaintiff's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself.  AR 19-20.  Because the ALJ found that the depression and PTSD "caused no more than 'mild' limitation" in each of the functional areas, it held that his mental impairments were non-severe.  AR 20.

Because the ALJ concluded that Plaintiff's coronary artery disease was severe, the ALJ moved on in the sequential analysis, but held at step four that Plaintiff was not disabled because he "was capable of performing past relevant work as a sales

---

[1] Page numbers reflect CM/ECF pagination except for citations to the administrative record which are cited with their original page number.

representative, data processing services and sales manager." AR 24.  This was based on the Residual Functional Capacity ("RFC") analysis, in which the ALJ emphasized the limitations on Plaintiff's physical abilities and did not address limitations caused by his mental impairments—though the ALJ briefly discussed the medical opinions on Plaintiff's mental health.  AR 20-24.

The Appeals Council denied review of the ALJ's decision on January 23, 2023, AR 1, and Plaintiff timely sought judicial review on March 20, 2023.  ECF No. 1.  Upon the parties' joint motion, ECF No. 15, the Magistrate Judge issued an R&R on February 1, 2024 recommending vacatur and remand because the ALJ's decision was not supported by substantial evidence at step two and because it failed to consider mild mental limitations in the RFC analysis, ECF No. 16.  No party filed objections or replies.

## STANDARD OF REVIEW

The Social Security Act provides for judicial review of a final agency decision denying a claim for disability benefits.  42 U.S.C. § 405(g).  The reviewing court may enter a judgment affirming, modifying, reversing, or remanding the Commissioner's decision for further proceedings.  *Id.*  The Court upholds the final agency action unless it is "based on legal error or not supported by substantial evidence in the record." *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (citation omitted).  "Substantial evidence" means more than "a mere scintilla," but is no more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Although this is a highly deferential standard of review, the Court must consider the entire record, weighing both the evidence that supports and detracts from the Commissioner's conclusion.  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

The district court "may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate."  28 U.S.C. § 636(b).  It need not review

de novo those portions of an R&R to which neither party objects. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). When no objections to an R&R are made, the district court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law. *Campbell v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 501 F.2d 196, 206 (9th Cir. 1974). No objections were made to this R&R.

## DISCUSSION

Plaintiff asserts that remand is appropriate because: (1) the ALJ failed to consider credible mental limitations in the RFC assessment and in the dispositive hypothetical question; and (2) the ALJ did not correctly apply the applicable de minimis standard in finding that Plaintiff's mental impairments were not severe. ECF No. 15 at 3, 21. The R&R agrees on both grounds. *See generally* ECF No. 16. The Court will address the issues in the reverse order; that is, in the order in which they arise in the sequential analysis.

**I.   Substantial evidence does not support the ALJ's decision that Plaintiff's mental impairments were non-severe.**

The Court adopts the Magistrate Judge's determination that "substantial evidence does not support the ALJ's conclusion that the PTSD and depression were non-severe" at step two of the five-step evaluation process. ECF No. 16 at 20.

At step two of the sequential process, the ALJ must determine whether an impairment is severe or not. 20 C.F.R. § 416.920(a)(4)(2). This analysis entails: determining whether the claimant has any medically determinable mental impairments; rating the degree of functional limitation resulting from the mental impairment(s) in four broad functional areas; determining the severity of the mental impairment(s); and then if any of the impairments is severe, proceeding in the sequential evaluation process. 20 C.F.R. § 416.920a(b)-(d); *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011). The four functional areas are a claimant's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt

4

or manage themselves. 20 C.F.R. § 404, Subpt. P, App. 1 at 12.00(A)(2)(b). In rating the degree of limitation, the following scale is utilized: none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(c)(4). If the degrees of limitation are rated as "none" or "mild," the impairment generally is considered not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [Plaintiff's] ability to do basic work activities." *Id.* § 416.920a(d)(1).

Agency regulation specifies that impairments are non-severe if the claimant does "not have any impairment or combination of impairments which significantly limits [their] physical or mental ability to do basic work activities." *Id.* § 416.920(c). Although the regulation states that the impairment must "significantly limit" the claimant's abilities, later agency and Ninth Circuit decisions have clarified that "[a]n impairment or combination of impairments may be found not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); Med. Impairments That Are Not Severe, SSR 85-28, 1985 WL 56856 (S.S.A. 1985). In other words, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

Applying the standard of review, the question before the Court is "whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb*, 433 F.3d at 687; *cf. Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here.").

Substantial medical evidence in the record does not "clearly establish" that Plaintiff's mental impairments had "no more than a minimal effect" on Plaintiff's ability

to do basic work activities.  *Webb*, 433 F.3d at 686-87.  In late December 2020, a psychotherapist, Dr. Clark, found that according to a diagnostic screening mechanism, Plaintiff had "very severe depression."  AR 549.  Dr. Clark also noted that another diagnostic screener indicated that Plaintiff had anxiety and an ACE score, which assesses adverse childhood experiences, in the top 1% of the male population.  *Id.*; ECF No. 15 at 23 n.8.  The medical record includes notes from weekly therapy sessions with Dr. Clark from December 2020 to March 2021, AR 541-61, and Plaintiff testified at the hearing that he had been seeing Dr. Clark regularly since 2017, AR 43.[2]  Plaintiff explained that he stopped seeing Dr. Clark because she stopped accepting Medi-Cal insurance.  AR 42-43.

In finding only non-severe limitations, the ALJ noted that Plaintiff denied memory loss, AR 19, 796, and focused heavily on a "Function Report" from the Social Security Administration in which Plaintiff stated that he drives, meditates, walks the dog, and cleans the house, and is able to manage money and his bank accounts, follow a recipe, and prepare meals, AR 19-20, 230-33.  The ALJ relied on statements from the same report to support the finding that Plaintiff had only mild limitations interacting with others because he "interacted with his daughter and indicated that he had no difficulty getting along with authority figures."  AR 19, 231, 235.

While the "Function Report" states that Plaintiff gets along well with authority figures, it also notes that he has been fired or laid off because of problems getting along with his boss.  AR 235.  Further, the only reference to his daughter is that she will remind him to do household chores if he forgets, which, without more detail, indicates nothing

---

[2] Q: How many times have you seen Dr. Mar[y] Clark in the last two or three years?
 A: Oh, I saw her quiet often because I was seeing her once a week.
 Q: When was that, sir?
 A: . . . . it had to be '17, '18, '19, and then the '20 and the early part of '21.

6

1 about his ability to get along with others. AR 231. Other parts of the same report not noted by the ALJ suggest that the Plaintiff has severe mental impairments. Plaintiff spends *no* time with others, sometimes forgets to pay bills on time, and can only follow directions if they are not too complicated. AR 233-34.

Although the ALJ points out that notes from a therapy appointment on February 8, 2021 showed that Plaintiff was in a "good mood," AR 19, 555, it fails to mention that the notes from an appointment the following week list Plaintiff's mood as depressive, AR 556. Dr. Clark's intake with Plaintiff also shows that he feels depressed "almost always," sometimes feels apart from people, sometimes has trouble concentrating, and often uncontrollably worries. AR 542. And in response to a question about mental health issues, Plaintiff testified that "there are times when it's lack of concentration, a will to get up and do anything. I know for a fact that after I had the sixth stent put in, I literally came into bed and stayed in bed for three days. I couldn't get up. I was unmotivated. My doctor's concern was that I wasn't eating." AR 42.

In addition, Dr. Shamani, Plaintiff's primary care physician, indicated in a report that Plaintiff's symptoms were occasionally "severe enough to interfere with attention and concentration needed to perform even simple work task" and that Plaintiff was only capable of low stress jobs. AR 536. The ALJ held that this opinion was unpersuasive because it "relied too much on the claimant's subjective complaints of neuropathy." AR 24; *see Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." (internal quotation marks and citations omitted)). However, as the Magistrate Judge pointed out, the "ALJ offered no basis for his conclusion that the answers provided by Dr. Shamani were merely reiterating Plaintiff's subjective

complaints [and the] ALJ also failed to specifically find Plaintiff's self-reports to be not credible." ECF No. 16 at 20.

In the RFC analysis, the ALJ found that the state agency medical consultants' opinions—that Plaintiff's mental impairments were non-severe—were persuasive because "there was minimal evidence of mental health treatment, and the claimant was not on psychotropic medication, which was inconsistent with severe mental health impairments." AR 23.  Nonetheless, as noted above, Plaintiff testified that he had been seeing a therapist for years, and the only reason he stopped was because the therapist no longer took his health insurance.  AR 42-43.  And it appears that he was on medication for PTSD and anxiety in 2018, but that the prescriptions were discontinued because he was "not feeling well on those medications."  AR 361, 38.  The ALJ also found that some of Plaintiff's activities, including planning a trip to Peru and looking for skilled work, were inconsistent with severe impairments.  *Id.*  But, as the Magistrate Judge explained, the Ninth Circuit has previously observed that a "claimant does not need to be utterly incapacitated in order to be disabled." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (internal quotation marks and citation omitted).

On this record, "the ALJ [did not have] substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe [mental] impairment or combination of impairments."  *Webb*, 433 F.3d at 687.  At the very least, this is not a groundless claim. *See Smolen*, 80 F.3d at 1290 ("[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."); *see also Ortiz v. Comm'r of Soc. Sec.*, 425 F. App'x 653, 655 (9th Cir. 2011) ("This is not the total absence of objective evidence of severe medical impairment that would permit us to affirm a finding of no disability at step two." (internal quotation marks and citations omitted)).  The ALJ is not entitled to "cherry pick" evidence to support a particular outcome and ignore contrary evidence.  *See Banuelos v. Saul*, No. 1:19-CV-01652, 2021

WL 765261, at *15 (E.D. Cal. Feb. 26, 2021); *Shah v. Comm'r of Soc. Sec.*, No. 2:19-CV-1184, 2020 WL 2992121, at *3 (E.D. Cal. June 4, 2020).  And here, even putting aside Dr. Shamani's medical opinion, the ALJ discounted most of the evidence supporting a finding of a severe mental impairment: Plaintiff's history of therapy with Dr. Clark, Dr. Clark's findings of severe depression, anxiety, and severe trauma, the parts of Dr. Clark's notes stating that Plaintiff was depressed, and that Plaintiff struggles to follow complicated directions and spends no time with others.  None of these factors are mentioned in the ALJ decision.  AR 19-24.

Given that an impairment is non-severe only if the record clearly establishes that the impairment had no more than a minimal effect on Plaintiff's ability to do basic work activities and that the ALJ discounted significant probative evidence supporting a finding of severe mental impairments, the Court ADOPTS the R&R and holds that the ALJ's determination that Plaintiff's mental health impairments were non-severe is not supported by substantial evidence.  On remand, the ALJ should properly account for all relevant evidence in the record consistent with this decision.

## II. The ALJ failed to consider credible mental limitations in his Residual Functional Capacity ("RFC") assessment and hypothetical question to the Vocational Expert.

The Court also adopts the Magistrate Judge's determination that the ALJ erred in failing to consider the mental limitations it found credible at step two in the RFC assessment.  The RFC assesses "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184, at *1 (S.S.A. July 2, 1996).  It is the most an individual can do despite their limitations. 20 C.F.R. § 404.1545(a)(1).  When assessing the RFC, an ALJ must consider all relevant evidence, specifically "all . . . medically determinable impairments of which [the ALJ is] aware, including . . . medically determinable impairments that are not 'severe[.]'" *Id.* §

404.1545(a)(2)-(3).  This analysis is distinct from the Psychiatric Review Technique performed at step two to determine whether a claimant's impairments are severe; non-severe impairments, especially when combined, may still prevent an individual from performing certain types of work.  *See* SSR 96-8P, 1996 WL 374184, at *4-5.

Courts in the Ninth Circuit have made clear that the ALJ must explicitly consider limitations caused by mild mental impairments in the RFC or explain why such impairments are not limiting.  *See Hutton v. Astrue*, 491 F. App'x 850, 850-51 (9th Cir. 2012); *Patricia C. v. Saul*, No. 19-CV-00636, 2020 WL 4596757, at *12 (S.D. Cal. Aug. 11, 2020), *report and recommendation adopted sub nom. Craig v. Saul*, No. 19-CV-636, 2020 WL 5423887 (S.D. Cal. Sept. 10, 2020) (collecting cases).  Such limitations should also be included in the hypothetical to the Vocational Expert unless the RFC explains why they are not limiting.  *See Hutton*, 491 F. App'x at 850; *Solomon v. Comm'r of Soc. Sec. Admin.*, 376 F. Supp. 3d 1012, 1021 (D. Ariz. 2019) ("When formulating such hypotheticals, an ALJ is not free to disregard properly supported limitations." (internal quotation marks and citation omitted)).

Here, the ALJ failed to consider credible mental limitations in the RFC and include them in the hypothetical.  At step two, the ALJ held that Plaintiff had mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adopting or managing oneself.  AR 19-20.  In the RFC analysis, the ALJ found that Plaintiff's coronary impairments produced functional limitations but were not disabling.  AR 20-24.  The ALJ did not reference the mild limitations it had previously found due to Plaintiff's PTSD and depression.  *See id.*  It briefly discussed medical opinions on Plaintiff's mental health in explaining that it would not defer to "prior administrative medical findings or medical opinions." AR 23.  Specifically, the ALJ stated that it found the opinions of the state agency Doctors of Psychology—that Plaintiffs' depression and PTSD were non-severe—persuasive, and the

opinion of Plaintiff's physician—that Plaintiff was capable of only low stress jobs due to his depression and anxiety interfering with his concentration—unpersuasive. AR 23-24. Nonetheless, there is nothing to indicate that the ALJ considered the *limitations* created by the mental impairments that it had already found existed in step two. *See* 20 C.F.R. § 404.1545(a)(2) (requiring the ALJ to consider non-severe impairments in the RFC); AR 19-20 (finding mild functional limitations in step two). Moreover, the ALJ's hypothetical to the Vocational Expert did not include any mental health limitations. AR 45-46.

Although these facts are arguably distinct from the many cases in which the RFC analysis did not even mention mental impairments, *see e.g.*, *Craig H. v. Kijakazi*, No. 22-CV-800, 2023 WL 4679342, at *12 (S.D. Cal. July 21, 2023), *report and recommendation adopted*, No. 22-CV-00800, 2023 WL 5340794 (S.D. Cal. Aug. 18, 2023), other district courts have addressed similar circumstances and found that this type of analysis is insufficient. In *Carlson v. Berryhill*, the ALJ's RFC analysis included a discussion of a doctor's psychiatric opinion that the plaintiff had no mental impairment, but the district court held that the ALJ "could not disregard his own finding [in step two] that the plaintiff had mild mental limitations" and remanded because "the ALJ did not discuss or give reasoned consideration of the plaintiff's depression and anxiety in his RFC assessment." No. 18-CV-03107, 2019 WL 1116241, at *17 (N.D. Cal. Mar. 10, 2019); *see also Smith v. Colvin*, No. 14-CV-05082, 2015 WL 9023486, at *9 (N.D. Cal. Dec. 16, 2015) ("While the ALJ was not required to include properly rejected evidence, she could not disregard her own finding that Plaintiff had mild mental limitations in three out of the four broad functional areas[.]").

Similarly, the ALJ's brief discussion of the psychiatric medical opinions was not an examination of the limitations caused by the mild mental impairments the ALJ had previously found. *See* AR 23. Rather, it was a reiteration of the finding that the mental impairments were not severe (a finding which the Court has already explained was not

supported by substantial evidence).  And the RFC requires a "more detailed discussion" to determine the most Plaintiff can do despite his limitations, including those due to the mild mental impairments.  SSR 96-8P, 1996 WL 374184, at *4; 20 C.F.R. § 404.1545(a)(1)-(2).  As the Magistrate Judge explained, "[a]lthough the ALJ addressed medical evidence showing that Plaintiff's depression and PTSD were non-severe, the ALJ did not explain why his findings of mild limitation in the four broad functional areas used to evaluate Plaintiff's mental impairments were not included in the RFC." ECF No. 16 at 8.  The inclusion of boilerplate language that the "residual functional capacity assessment reflects the degree of limitation" found in step two does not cure this failing. *See, e.g.*, *Michele M. v. Saul*, No. 19-CV-00272, 2020 WL 1450442, at *8 (S.D. Cal. Mar. 25, 2020).[3]

      The Court further agrees with and fully adopts the R&R's determination that this error was not harmless because, considering that Plaintiff had a history of skilled work, "[a] properly formulated RFC might contain mental limitations inconsistent with Plaintiff's past relevant work that the ALJ found Plaintiff could perform." ECF No. 16 at 11.

      Accordingly, the Court ADOPTS the R&R and holds that the ALJ erred by failing to include or otherwise address mental limitations in the RFC or in the hypothetical question to the Vocational Expert.  Because a properly construed RFC might change the outcome, the Court REMANDS for the ALJ to conduct this analysis consistent with this decision.

---

[3] The Commissioner's argument that finding mild mental limitations at step two does not require finding functional limitations at step four is inapposite, ECF No. 15 at 15-17; the Court does not hold otherwise.

**CONCLUSION**

The Court ADOPTS the Magistrate Judge's Report and Recommendation, VACATES the ALJ's decision, and REMANDS for further proceedings consistent with this decision.

**IT IS SO ORDERED.**

Dated: March 25, 2024

Hon. Gonzalo P. Curiel
United States District Judge